IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| **Stanley W. Ellswick,** | } | **Case No. 15-41196-JJR13** |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| **Stanley W. Ellswick,** | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | **AP No. 15-40048-JJR** |
| | } | |
| **Quantum3 Group, LLC,** | } | |
| | } | |
| Defendant. | } | |

## OPINION AND ORDER

The debtor-plaintiff, Stanley W. Ellswick ("Ellswick"), commenced the above adversary proceeding (the "AP") against creditor-defendant, Quantum3 Group, LLC ("Quantum"), and the AP is now before the court on Ellswick's Motion to Compel Arbitration (AP Doc. 30).[1] The court has jurisdiction over the AP pursuant to 28 U.S.C. §§ 157(a) and (b), and 1334(a) and (b), and the General Order of Reference, as amended, issued July 16, 1984 by the U.S. District Court, Northern District of Alabama. The AP is a core proceeding and the court may enter final judgments and orders pursuant to 28 U.S.C. § 157(b).

---

[1] Reference to an "AP Doc." is to a document filed in the AP. Reference to a "Doc." is to a document filed in Ellswick's chapter 13 bankruptcy case. Reference to the "Code" is to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and reference to a "Rule" is to a particular Rule of the Federal Rules of Bankruptcy Procedure.

1

Timeline of Events

Ellswick filed his chapter 13 case on July 31, 2015, and on September 4, 2015 Quantum filed an unsecured proof of claim (claim 6) in the case for $592.50. According to the proof of claim, Advance America was the original creditor, its assignee, Sadino Funding LLC, is the current holder of the debt, and Quantum is acting as agent for Sadino.[2] The Customer Agreement (the "Customer Agreement") between Advance America and Ellswick, contained an alternative dispute resolution provision that read as follows:

> If you [i.e., Ellswick] have any dispute with us [i.e., Advance America] or if we have any dispute with you, then both you and we must seek resolution of the dispute in either small claims court or in arbitration. If your dispute cannot be filed in small claims court for any reason, then you must seek resolution of your dispute in arbitration. . . . .

(AP Doc. 30, Exhibit A.)

Ellswick objected to Quantum's claim (Doc. 33 and herein, the "Claim Objection"), alleging that the underlying debt was void because it violated state law governing deferred presentment transactions—loans advanced against postdated checks—and also violated the Federal Truth In Lending Act. The Claim Objection sought to have the claim disallowed in its entirely, and asked that the merits of the objection be determined by arbitration pursuant to the Customer Agreement. Ellswick moved to stay the Claim Objection pending arbitration (Motion to Stay Doc. 34), and Quantum responded (Doc. 57) that it did "not oppose the staying of the [Claim Objection] until the arbitration is resolved." Thus, on November 3, 2015 the court granted Ellswick's motion to stay (Doc. 65).[3] In the meantime, on October 14, 2015, Ellswick

---

[2] Neither Sadino nor Advance America was named as a defendant in the AP.

[3] One has to wonder why Quantum did not simply concede the Claim Objection in light of the small amount of its claim and Ellswick's plan (Doc. 29) that proposed to pay nothing to Quantum and other unsecured creditors. Nonetheless, it was only because Quantum consented that the court granted Ellswick's motion to stay the Claim Objection pending arbitration; had

filed the AP alleging that Quantum's proof of claim violated the Fair Debt Collection Practices Act ("FDCPA") because attached to the claim was a statement of account information required by Rule 3001(c)(3)(A) for open-end and revolving credit transactions—e.g., VISA and MasterCard charge accounts—but the underlying debt, according to Ellswick, was not open-end or revolving.[4]   Ellswick alleged that the attachment to the proof of claim was a "false

---

Quantum objected, the court would likely have denied the motion.  Allowance and disallowance of creditors' claims pursuant to Code §§ 501 and 502, and Rules 3001-08 are core proceedings under 28 U.S.C. § 157(b)(2)(B), and should remain in the exclusive jurisdiction of bankruptcy courts and those courts should not defer to arbitrators to resolve simple claims allowance matters regardless of the ubiquitous alternative dispute resolution provisions found in virtually all consumer credit agreements. In most instances, including the Claim Objection in this case, there is a conflict between the federal policy favoring arbitration and a fundamental purpose of the claims allowance procedure under the Code and Rules: That purpose is "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal [expensive and time consuming] litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Ins. Co. of N. Am. V. GC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1069 (5th Cir. 1997). When compared with a bankruptcy court's claims allowance process conducted in accordance with the Code and Rules, arbitration is expensive and most critically, time consuming.  Simple objections to claims are routine matters that are filed in a large percentage of cases, and are adjudicated within a few weeks after they are filed—at least in this court they are.  Hearings on chapter 13 plan confirmations must be scheduled not later than 45 days after the date of the meeting of creditors under Code § 341(a), and those meetings must be set no more than 50 days after the petition date of the case. Rule 2003(a).  Moreover, payments by the trustee to creditors cannot commence until after plan confirmation. Code § 1326(a)(2).  It is not practical to delay plan confirmation or distributions to creditors while objections to claims are outsourced to arbitration.   And if plans are confirmed without knowing which claims will ultimately be allowed, the plan's feasibility and the amount that will be distributed to creditors remain in limbo until the arbitrator's award is entered.  Plan confirmation and trustee's distributions to creditors are interrelated with the allowance and disallowance of claims, and all should proceed with deliberate speed at a minimum expense to the parties, and should not be put on hold or subject to modification pending the announcement of an arbitrator's award.

[4] Rule 3001(c)(3)(A) provides that when a claim is based on an open-end or revolving consumer credit agreement, except one secured by real estate, a statement must be filed with the proof of claim that includes:

> (*i*) the name of the entity from whom the creditor purchased the account;
> (*ii*) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;

3

representation," and was an unfair and unconscionable means of attempting to collect the debt. Ellswick seeks statutory damages as well as actual damages, attorney fees, and costs under the FDCPA and also prays for injunctive relief. The complaint further asserts that Quantum violated Rule 3001 by not providing him with a copy of the Customer Agreement, but prays for no specific relief related to that assertion. The grounds for voiding the debt alleged in the Claim Objection were not mentioned in the AP complaint.[5]

On November 16, 2015, Quantum moved to dismiss the AP (AP Doc. 11), and Ellswick filed a response in opposition on December 7, 2015 (AP Doc. 20). Following a hearing on December 8, 2015, the court established a briefing schedule for the motion to dismiss, and the parties filed their submissions for the court's consideration. On February 3, 2016 the court scheduled a status conference in the AP for February 25, 2016. On February 22, 2016, over four months after filing the AP and three days before the status conference, Ellswick moved to compel arbitration in the AP (AP Doc. 30), which Quantum opposed (AP Doc. 38). The court conducted the status conference, and established a briefing schedule for the motion to compel arbitration in the AP, while putting the motion to dismiss on hold pending its ruling on the

---

      (*iii*) the date of an account holder's last transaction;
      (*iv*) the date of the last payment on the account; and
      (*v*) the date on which the account was charged to profit and loss.

It appears that the "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information," attached to Quantum's proof of claim included all the above information. Although the court has not been presented with evidence that would confirm exactly what type credit transaction was covered by Quantum's proof of claim, it is likely that the deferred presentment credit transaction at issue was a closed-end transaction.

[5] Ellswick's Claim Objection, a matter under Rule 3007, was based on the allegation that the debt was void under state law, and did not seek relief beyond disallowance of Quantum's claim. The AP, a proceeding under Rule 7001, was based on totally different allegations from those asserted in the Claim Objection. The AP did not question the validity of the debt, but sought damages under the FDCPA arising from Quantum's failure to comply with Rule 3001 when it filed its proof of claim.

4

arbitration issue. The parties submitted their briefs on the arbitration issue, and the court has now considered the briefs along with the relevant statutory and case law, the pleadings in the AP and in the underlying bankruptcy case, and for the reasons that follow, will deny the motion to compel arbitration.

Authority and Discussion

*(a) Waiver Due to Substantial Litigation Activity and Prejudice*

As a threshold matter, the court and not the arbitrator should decide whether a party has waived arbitration by virtue of its litigation conduct. *Grigsby Associates, Inc. v. M Securities Investment*, 664 F.3d 1350 (11th Cir. 2011). In making this determination, the first issue the court must decide is whether Ellswick waived his right to demand arbitration by filing the AP and participating in the litigation process for almost four months before demanding arbitration. The court finds that by filing the AP and engaging in litigation activities, including opposing the motion to dismiss on the merits, participating in a hearing on the motion to dismiss and in a status conference where contested issues were in play, and briefing the motion to dismiss—all before moving to compel arbitration—Ellswick waived the right to compel arbitration of the claims asserted in the AP. Ellswick's conduct in the AP was inconsistent with any right to arbitrate, in addition to being prejudicial to Quantum. Ellswick's actions before he sought arbitration required Quantum to expend resources preparing for and participating in court hearings, and in the preparation of pleadings and briefs in support of its motion to dismiss. These activities are all well beyond what could be described as "minimal" conduct in litigation, as contended by Ellswick in his Response at AP Doc. 38. *See Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) (delay in seeking arbitration supports waiver); *compare Grigsby & Associates, Inc. v. M Securities Investment*,

5

635 Fed. Appx. 728 (11th Cir. 2015) (filing of "placeholder" lawsuits, which required only minimal time and resources on the part of the defendant, did not amount to a waiver); *with S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (party participated in substantial litigation activity before demanding arbitration and therefore waived the right to arbitrate); *and with Johnson v. Keybank Nat'l Assoc. (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1294-96 (11th Cir. 2014) (arbitration waived based on prejudice to non-movant when movant's litigation caused non-movant to expend resources on litigation expenses that arbitration was intended to avoid). As the Eleventh Circuit explained:

> "Arbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg),* 62 F.3d 1356, 1365 (11th Cir.1995). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). But "the doctrine of waiver is not an empty shell." *Morewitz,* 62 F.3d at 1366. Waiver occurs when both: (1) the party seeking arbitration "substantially participates in litigation to a point inconsistent with an intent to arbitrate"; and (2) "this participation results in prejudice to the opposing party." *Id.* Prejudice exists when the party opposing arbitration "undergo[es] the types of litigation expenses that arbitration was designed to alleviate." *Id.* (citing *E.C. Ernst, Inc. v. Manhattan Constr. Co.,* 559 F.2d 268, 269 (5th Cir.1977) (per curiam)).

*In re Checking Account Overdraft Litig.*, 754 F.3d at 1294. Because this court finds Ellswick's conduct was inconsistent with the right to arbitrate and was prejudicial to Quantum, it concludes that Ellswick waived his right to compel arbitration of the claims asserted in the AP complaint.

*(b) Arbitration of AP Claims Would Conflict With Code*

Alternatively, even in the absence of waiver, the motion to compel arbitration of the AP is due to be denied for another critical reason. The claims in the AP complaint begin and end with the proof of claim filed by Quantum in the underlying chapter 13 case and have no relation whatsoever with the validity or enforceability of the debt under non-bankruptcy law or the Consumer Agreement. Contrary to Ellswick's assertion, all the claims in the AP are strictly

6

core; they could not arise anywhere other than in a bankruptcy case under title 11. The claims simply do not exist apart from Ellswick's bankruptcy case, and the action taken by Quantum during and in the case. To say, as Ellswick has, that because some FDCPA claims may exist in the abstract aside from a bankruptcy case does not answer the relevant question, which is: Could the particular FDCPA claims asserted in this specific AP exist apart from this bankruptcy case? The simple answer is no. The AP claims relate solely to the content of Quantum's proof of claim and its alleged failure to comply with Rule 3001, and have nothing to do with the validity or enforcement of the underlying debt, or prepetition matters. Accordingly, the court finds that the alleged FDCPA claims arose in Ellswick's bankruptcy case because of the content of Quantum's proof of claim, not because of some independent, prepetition occurrence or non-bankruptcy matter, and are, therefore, core proceedings within the context of 28 U.S.C. § 157(b)(1).[6]

Although the claims at issue in the AP are all core, if Ellswick had not waived his right to seek arbitration by engaging in substantial and prejudicial litigation activity before demanding arbitration, the court would still have to examine whether allowing an arbitrator to decide the claims would create an inherent conflict with the Code and Rules before it may deny arbitration. *Whiting-Turner Contr. Co. v. Electric Machinery Enters., Inc. (In re Electric Machinery Enters., Inc.)*, 479 F.3d 791 (11th Cir. 2007). In *Electric Machinery*, the Eleventh Circuit applied the three-prong test dictated by the Supreme Court in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) to decide whether the Federal Arbitration Act's ("FAA") broad mandate favoring arbitration was overridden by the Bankruptcy Code:

> In *McMahon,* the United States Supreme Court promulgated a three factor test in order to determine Congress' intent: "(1) the text of the statute; (2) its legislative

---

[6] Apart from his FDCPA claims, Ellswick concedes that his AP claims for violation of Rule 3001 are core proceedings.

7

history; and (3) whether 'an inherent conflict between arbitration and the underlying purposes [of the statute]' exists." *Davis,* 305 F.3d at 1273 (alteration in original) (quoting *McMahon,* 482 U.S. at 227, 107 S. Ct. at 2338). In applying the *McMahon* factors, " 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' " *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991). Applying the *McMahon* factors to the Bankruptcy Code, we find no evidence within the text or in the legislative history that Congress intended to create an exception to the FAA in the Bankruptcy Code. *See Mintze v. Am. Gen. Fin. Servs., Inc. (In re Mintze),* 434 F.3d 222, 231 (3d Cir. 2006) (finding no evidence of such an intent in the statutory text or legislative history of the bankruptcy code). Therefore, we look to the third factor of the *McMahon* test and examine whether an inherent conflict exists between arbitration and the underlying purposes of the Bankruptcy Code.

*Electric Machinery*, 479 F.3d at 795-96. Thus, this bankruptcy court must determine whether there would be a conflict with the purposes underlying the Code if it were to allow arbitration of causes of action arising from creditors' proofs of claim where those causes of action arose exclusively from non-compliance with the content prescribed for proofs of claim by the Rules.[7]

> "This determination requires a particularized inquiry into the nature of the claim and the facts and specific bankruptcy." *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 108 (2d Cir. 2006). "The objectives of the Bankruptcy Code relevant to this inquiry include 'the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.' " *Id.* (quoting *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),* 118 F.3d 1056, 1069 (5th Cir.1997)).

---

[7] Rule 9009 states that "the Official Forms prescribed by the Judicial Conference . . . shall be observed and used with alterations as may be appropriate." Official Form B 410 is prescribed for a proof of claim, however neither that form, nor the related Attachment A and Supplements 1 and 2, include the statement of account information required by Rule 3001(c)(3)(A) for claims based on an open-end or revolving credit transaction. Rule 3001(c)(2)(D) prescribes penalties that may be imposed by the court against claimants who fail to provide information required by subdivision (c). Those penalties include a prohibition from using the omitted information in a contested matter or adversary proceeding, or an award of other appropriate relief, including the debtor's expenses and attorney's fees incurred because of the failure. Although one of Ellswick's AP claims is that Quantum failed to file a copy of the Customer Agreement with the proof of claim, his other AP claims are based not on the omission of required information, but on Quantum having provided more information than required by Rule 3001.

*Harrelson v. Spray (In re Harrelson)*, 537 B.R. 16, 26 (Bankr. M.D. Ala. 2015). Because the issues regarding the content of Quantum's proof of claim are unique to the bankruptcy process, and fall within a bankruptcy court's specialized knowledge, the court finds that allowing arbitration of the AP would conflict with the Bankruptcy Code's purpose of having a centralized forum—the bankruptcy court—determine purely bankruptcy issues that arose within the administration of the case, e.g., allowance of claims, as well as the form and content of claims. *See also McCallan v. Hamm*, 2012 WL 1392960, *7 (M.D. Ala. 2012) (denying arbitration of non-core breach of contract issues due to the effect on the bankruptcy estate and on "the larger bankruptcy process"); and *see Cooley v. Wells Fargo Fin. (In re Cooley)*, 362 B.R. 514, 520 (Bankr. N.D. Ala. 2007) ("Stated another way, if the debtor brought the cause of action, contested matter or other dispute underlying the proceeding with him when he filed bankruptcy, no inherent conflict is likely to be found with the enforcement of contractual arbitration. However, if such cause of action, contested matter or other dispute could only exist *after* the bankruptcy case was commenced, then an inherent conflict exception under the *McMahon* standard is more likely to be found." (emphasis added)).

Ellswick concedes that his Rule 3001 allegations indeed lie within this court's purview, but argues the FDCPA claims do not, and, therefore, contends that an arbitrator should decide both issues. This overlooks the fact that there are no FDCPA claims that Ellswick can assert apart from those based on Quantum's postpetition activity in the bankruptcy case. The bankruptcy court is uniquely qualified to decide matters—even FDCPA claims if they indeed may arise during the claims allowance process— which depend entirely upon the Code and Rules for their genesis.

Order

Accordingly, based upon the foregoing, the court finds that the motion to compel arbitration (AP Doc. 30) is due to be, and hereby is DENIED. The parties may submit additional briefs on the merits of Quantum's motion to dismiss the AP (AP Doc. 11), but are not required to do so. Any additional briefs the parties wish the court to consider shall be due within twenty-one days of the entry of this Order. At that time, the motion to dismiss (AP Doc. 11) will again be under advisement.

So done and ordered this 24th day of June 2016.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE

10

Case 15-40048-JJR    Doc 43    Filed 06/24/16    Entered 06/24/16 15:01:38    Desc Main
Document      Page 10 of 10