IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| Stanley W. Ellswick, | } | Case No. 15-41196-JJR13 |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| Stanley W. Ellswick, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | AP No. 15-40048-JJR |
| | } | |
| Quantum3 Group, LLC, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

Introduction and Jurisdiction

      The debtor-plaintiff, Stanley W. Ellswick ("Ellswick"), commenced an adversary proceeding (the "AP") against creditor-defendant, Quantum3 Group, LLC ("Quantum"), and the AP is now before the court on Quantum's Motion to Dismiss (AP Doc. 11).[1] The operative facts alleged in the AP complaint are not in dispute, and in accordance with Rule 7012(b)—applying Fed. R. Civ. P. 12(b)-(i) to bankruptcy adversary proceedings—the court's ruling on Quantum's Motion to Dismiss is based solely on the parties' pleadings and admissions.

---

[1] Reference to an "AP Doc." is to a document filed in the AP. Reference to a "Doc." is to a document filed in Ellswick's chapter 13 bankruptcy case. Reference to the "Code" is to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and reference to a "Rule" is to a particular Rule of the Federal Rules of Bankruptcy Procedure, which are collectively referred to as the "Rules."

In the AP complaint (AP Doc. 1), Ellswick alleged that the proof of claim—claim 6 in the claims registry—filed by Quantum in Ellswick's chapter 13 bankruptcy case violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), because filed with the claim was a statement of account information required by Rule 3001(c)(3)(A) for open-end and revolving credit transactions—e.g., VISA and MasterCard charge accounts—but the underlying debt was not open-end or revolving. It was a closed-end credit transaction.[2] Quantum filed the claim as agent for Sadino Funding LLC ("Sadino") and Quantum does not dispute that it qualifies as a "debt collector" for the purposes of the FDCPA.[3] Sadino was the assignee of the original creditor, Advance America, but neither Sadino nor Advance America were named as defendants in the AP, apparently because they are not "debt collectors" under the FDCPA.

---

[2] Rule 3001(c)(3)(A) provides that when a claim is based on an open-end or revolving consumer credit agreement, except one secured by real estate, a statement must be filed with the proof of claim that includes:

> (i) the name of the entity from whom the creditor purchased the account;
> (ii) the name of the entity to whom the debt was owed at the time of an account holder's last transaction on the account;
> (iii) the date of an account holder's last transaction;
> (iv) the date of the last payment on the account; and
> (v) the date on which the account was charged to profit and loss.

With its proof of claim Quantum filed a statement entitled "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information" which included all the above information. A copy of the credit agreement between Ellswick and the originating creditor, Advance America, was attached to an earlier motion filed by Ellswick (AP Doc. 30). That agreement evidenced a closed-end credit transaction, and Quantum does not argue otherwise.

[3] "The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b) and 1334(a), (b), and the General Order of Reference, as amended, issued July 16, 1984 by the U.S. District Court, Northern District of Alabama. The AP is a core proceeding, as the court found in its prior order at AP Doc. 43, denying Ellswick's Motion to Compel Arbitration in the AP. Thus, the court may enter final judgments and orders pursuant to 28 U.S.C. § 157(b).

Background and Findings

Soon after Quantum filed its proof of claim and before the AP was commenced, Ellswick filed an Objection to Claim and Motion to Stay Pending Arbitration. (Docs. 33, 34.) The objection alleged that the debt underlying the claim was void because it violated Title 5, Section 18A of the Code of Alabama, which governs deferred presentment consumer loans—loans advanced against postdated checks.[4] Unlike the AP complaint, the objection to claim made no mention of the FDCPA. Ellswick, Quantum, and Sadino agreed that pursuant to an arbitration provision in the consumer credit contract between Ellswick and the original creditor, Advance America, they should submit the objection to arbitration, which they did. (Docs. 57, 65.) Apparently Ellswick prevailed at the arbitration because the claim was later withdrawn. (Docs. 116, 117.)

As previously mentioned, the debt covered by Quantum's proof of claim was a closed-end credit transaction: Advance America made a $500.00 loan to Ellswick on March 3, 2015, that was to be repaid in full on April 3, 2015 with finance charges of $87.50. (*See* Customer Agreement attached to Doc. 30.) But included with the proof of claim was a statement with a

---

[4] The objection also asserted that the claim was void because the alleged violation of Title 5, Section 18A of the Code of Alabama also constituted a violation of the Federal Truth in Lending Act.

3

heading that read, "Bankruptcy Rule 3001(c)(3)(A) Statement of Account Information." (Claim 6.) This statement provided the following information: (i) account number; (ii) name of the original creditor; (iii) debtor's name; (iv) debtor's redacted SSN; (v) open date; (vi) current creditor/assignee; (vii) assignor; (xiii) charge off date; (ix) last payment amount; (x) last transaction date; (xi) entity to whom debt was owed at last transaction; and (xii) total balance due and itemization of principal, interest, fees, and costs. Ellswick did not allege that any of this information was incorrect or false, but he did maintain that, although neither the proof of claim nor the statement of account *expressly* identified the credit transaction as being open-end or revolving (or for that matter, closed-end), the inclusion of the open-end, revolving disclosures with a proof of claim filed for a closed-end obligation violated the FDCPA because it was: (1) a false representation of the character of the debt, although admittedly an implicit rather than explicit representation (*see* Supplemental Response, AP Doc. 22, 6), in violation of 15 U.S.C. § 1692e(2); (2) a false representation or deceptive means of collecting the debt in violation of 15 U.S.C. § 1692e(10); and (3) an unfair or unconscionable means of attempting to collect the debt in violation of 15 U.S.C. § 1692f.[5] Ellswick seeks statutory damages as well as actual damages, attorney fees, and costs under the FDCPA and also prays for injunctive relief.[6] Ellswick's

---

[5] 15 U.S.C. § 1692e(2) provides that it is a violation for a debt collector to make a "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(10) provides that it is a violation for a debt collector to engage in "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Finally, 15 U.S.C. § 1692f provides, in part, that "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

[6] Damages recoverable under the FDCPA are set forth in 15 U.S.C. § 1692k(a), which provides:

complaint asserted in its "Facts" recitations that Quantum violated Rule 3001 by failing to provide him with a copy of the credit agreement for the closed-end transaction, and that such failure was "sanctionable under Rule 3001."[7]

---

      (a) Amount of damages. Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
          (1) any actual damage sustained by such person as a result of such failure;
          (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or
          (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and
          (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

[7] As sanctions against a creditor who files a proof of claim in a consumer bankruptcy case, but who fails to provide information required by subdivision (c) of Rule 3001—including a copy of the credit agreement for a closed-end transaction—the court may:

(i)     preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
(ii)    award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Rule 3001(c)(2)(D).

      Ellswick never followed the procedure prescribed in Rule 3001(c)(3)(B), which provides that when a claim is filed for an open-end, revolving credit transaction, as this claim implicitly was by Ellswick's reasoning, and no contract is attached, the debtor may request a copy of the writing on which the claim is based. Ellswick did not need a copy of his credit contract; he already had one. He referred to the arbitration clause in the credit contract when he filed his Objection to Claim and Motion to Stay Pending Arbitration (Docs. 33, 34), thus he already had a copy of the contract before he filed the AP, which was filed after the objection to claim.

5

Case 15-40048-JJR    Doc 51    Filed 11/23/16    Entered 11/23/16 15:36:21    Desc Main
Document    Page 5 of 13

Analysis and Conclusions

Quantum maintains that the facts as alleged in the complaint do not state a claim for damages of any type under the FDCPA, and the court agrees. The Motion to Dismiss accurately analyzed the three counts of the AP complaint in light of the Eleventh Circuit's recent decision in of *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015):

> First, Ellswick has "failed to allege facts sufficient to state a claim under § 1692e(10) or, more generally, § 1692e." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1306 (11th Cir. 2015). "Section 1692e generally prohibits deceptive practices in debt collection," examples of which "include implying that the consumer committed any crime, falsely representing the amount of the debt, and threatening to take legal action that is not intended to be taken." *Id.* (citing 15 U.S.C. § 1692e(1)–(16)). Here, however, Quantum's proof of claim "is not misleading or deceptive in the traditional sense." *Id.* Like the sworn reply that the Eleventh Circuit held in *Miljkovic* was not actionable under § 1692e, Quantum's proof of claim "does not misrepresent the nature or effect" of the underlying debt; "[i]t does not erroneously state the amount of the debt owed by [Ellswick]"; "[i]t does not incorrectly identify the holder of the alleged debt"; and "[i]t does not contain 'false or deliberately ambiguous threats of litigation.'" *Id.* Instead, the proof of claim merely represents that Quantum is the agent of Sadino, LLC, to whom Ellswick owes a valid debt, and requests to share in the distributions from his bankruptcy estate. Ellswick, on the other hand, does not so much as "allege how he—or anyone else—was 'misled, deceived, or otherwise duped' by the submission of [the proof of claim]." *Miljkovic*, 791 F.3d at 1307.
>
> More importantly, Ellswick's suggestion that Quantum's proof of claim was deceptive or misleading is belied by his objection to the claim and by the fact that he clearly was already in possession of the contract that he insists should have been attached to the proof of claim. Not even the least sophisticated consumer could plausibly be "misled, deceived, or duped" by Quantum's failure to attach a contract that quite clearly was already in his possession. Accordingly, "[b]ecause [Ellswick's] allegations as stated in his complaint are insufficient to establish deceptive means of collecting a debt under § 1692e or § 1692e(10), [he] fails to

---

Inasmuch as Ellswick already had a copy of the contract, the failure to file a copy of the contract with the proof of claim was harmless and would not support an award of sanctions under Rule 3001(c)(2)(D). Nonetheless, if Ellswick wanted sanctions under Rule 3001(c) he should have sought them in conjunction with his objection to claim, not in the AP. Additionally, Quantum's proof of claim was withdrawn following arbitration of Ellswick's objection to claim, thus any entitlement he may have had to Rule 3001 sanctions is now moot.

state a cause of action, and his claim[s] [should be] dismissed." *Miljkovic*, 791 F.3d at 1307.

"Finally, § 1692f's catch-all prohibition on unfair and unconscionable conduct does not net [Ellswick's] complaint." *Id.* at 1308. Indeed, "[a] catch-all is not a free-for-all," and to state a claim under § 1692f, Ellswick's complaint must "specifically identify how [Quantum's] conduct here was either unfair or unconscionable *in addition to* being . . . deceptive or misleading." *Id.* (emphasis in original). Here, however, Ellswick "fails to allege any conduct beyond that which he asserts violates the other provisions of the FDCPA." *Id.* Thus, Ellswick's § 1692f claim is due to be dismissed unless he "allege[s] facts showing that the least sophisticated consumer would or could view [Quantum's proof of claim] as partial and unjust or as unscrupulous and unethical." *Id.* He "makes no such allegations." *Id.*

"Looking to the conduct that *is* alleged, [it's difficult] to see how [Quantum's proof of claim] . . . was either deceitful or an affront to justice." *Miljkovic*, 791 F.3d at 1308 (emphasis in original). Indeed, "[Quantum's] conduct, as alleged, is a 'far cry' from the types of behavior proscribed by § 1692f." *Id.* at 1309 (citing *Watkins v. Peterson Enters.*, 57 F. Supp. 2d 1102, 1108–09 (E.D. Wash. 1999) (holding that serving writs of garnishment that overstated the debt was not an abusive practice because the types of behavior described in the statute "are a far cry from that at issue")) (other citations omitted). In short, there is nothing "shockingly unfair or unjust" about filing a proof of claim that either includes information that should have been omitted or omits information that should have been included. *Id.* at 1308. Thus, even if his claims were not precluded by the Code and Rules, Ellswick still has failed to state a claim under § 1692f.

(AP Doc. 11, 8-9.)

Ellswick argued in his response (AP Doc. 20) that he does not have to prove he was harmed by the alleged false representation, because the FDCPA imposes strict liability, and cites *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) for that proposition. Quantum correctly points out that even under the least-sophisticated consumer standard, the Eleventh Circuit requires a "quotient of reasonableness" in assessing claims for damages under the FDCPA. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Stewart v. Bureaus Inv. Grp., LLC*, No. 3:10-CV-1010-WKW, 2015 WL 7572312 at *15 (M.D. Ala. Nov. 24, 2015) ("[T]o preserve the reasonableness of the FDCPA's application, courts should, in most cases, only impose liability where the misrepresentations at issue actually affect the consumer's

behavior", at least in the absence of an affirmative duty under the statute to accurately disclose the information at issue, such as the identity of the creditor in an initial communication.).[8]

Ellswick alleged nothing in the complaint that would establish any connection between the inclusion in the proof of claim of superfluous open-end, revolving disclosures and how he was, under the standard of a reasonable but least-sophisticated consumer, misled or confused for purposes of § 1692e(2) of the FDCPA, or how he was misled or deceived for purposes of §1692e(10). *See* Quantum's Reply, AP Doc. 23, 3-4, citing *Wahl v. Midland Credit Mgmt., Inc.*,

---

[8] As Quantum correctly explained in note 3 of its Reply (AP Doc. 23):

"Many circuit courts agree with this general reading, holding that only material misrepresentations are relevant under FDCPA." *[Stewart v. Bureaus Inv. Grp., LLC, No. 3:10-CV-1019-WKW, 2015 WL 7572312, at \*15 (M.D. Ala. Nov. 24, 2015)]* (citing *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) ("A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material."); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response."); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense. For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the unsophisticated consumer.")); *see also Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (holding that "a statement cannot mislead unless it is material, so a false but nonmaterial statement is not actionable" under the FDCPA); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596 (6th Cir. 2009) (concluding that a false but non-material statement is not actionable under § 1692e).

"Additionally, several lower courts within the Eleventh Circuit apply a materiality limitation to their analysis of § 1692e claims." *Stewart*, 2015 WL 7572312, at \*15 (citing *Miljkovic v. Shafritz & Dinkin, P.A.*, No. 14- CV-635, 2014 WL 3587550, at \*8 (M.D. Fla. July 18, 2014) ("[T]o state a § 1692e claim, the plaintiff must allege that the conduct was materially misleading. To be materially misleading, a statement must 'influence a consumer's decision or ability to pay or challenge a debt.'") (citation omitted), *aff'd on other grounds,* 791 F.3d 1291 (11th Cir. 2015); *Samuels v. Midland Funding, LLC*, 921 F. Supp. 2d 1321, 1332 (S.D. Ala. 2013); *In re McMillen*, 440 B.R. 907, 913 (Bankr. N.D. Ga. 2010)); *see also Johnson v. Credit Prot. Ass'n, L.P.*, No. 11-CV-80604, 2012 WL 5875605, at #5 (S.D. Fla. Nov. 20, 2012)."

556 F.3d 643, 645-46 (7th Cir. 2009) (explaining that the least-sophisticated consumer "isn't a dimwit", instead having "rudimentary knowledge about the financial world" and being "capable of making basic logical deductions and inferences", so that "[i]f a statement would not mislead [the least-sophisticated] consumer, it does not violate the FDCPA—even if it is false in some technical sense. . . . For purposes of § 1692e, then, a statement isn't 'false' unless it would confuse the [least-sophisticated] consumer."). Further, because he failed to state a claim under § 1692e, he necessarily failed to state a claim under § 1692f. *See Miljkovic*, 791 F.3d at 1307.

Although not alleged in his complaint, Ellswick argued in one of his briefs that perhaps Quantum wanted to conceal the contents of the credit agreement, and so rather than include a copy of the agreement as it should for a closed-end transaction, chose instead to disguise the transaction by including the open-end, revolving disclosures when filing the proof of claim. (Supplemental Brief, AP Doc. 46, 3-4.) Ellswick's contentions in his brief that the omission of the credit agreement and inclusion of unnecessary information were calculated to hide the true nature of the transaction and the content of the credit agreement are mere conclusions and not supported by plausible factual allegations in the complaint that, even if true, would entitle Ellswick to recover damages or other relief under the FDCA.[9] More importantly, based on the

---

[9] The United States District Court for the Northern District of Alabama has very recently explained the analysis required when ruling on a motion to dismiss for failure to state a claim:

> To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly* [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' " the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

facts Ellswick did plead, Quantum's conduct was not sufficient to run afoul of the protections provided to consumers under the FDCPA. The additional information furnished by Quantum, albeit only required for open-end or revolving transactions under Rule 3001(c)(3)(A), was not misleading; in fact it was informative beyond what Rule 3001 requires for closed-end obligations. And while the failure to file a copy of a credit agreement with a proof of claim as required by Rule 3001(b)(1) may cause a creditor to forfeit the evidentiary presumption of validity of the claim under Rule 3001(f)[10] and potentially suffer sanctions under Rule 3001(c)(2)(D), such failure is a far cry from being misleading or deceptive under the FDCPA or otherwise, especially where, as was the case here, the debtor had a copy of the credit agreement in his own file or obtained one soon after the proof of claim was filed.[11]

The form of the disclosure filed with the proof of claim would be entirely meaningless to the least-sophisticated consumer, and the content of the disclosure would merely confirm what

---

> In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.' " *Kivisto v. Miller, Candield, Paddock & Stone, PLC*, 413 Fed. Appx. 136, 138 (11th Cir. 2011) (quoting *Am. Dental Assn. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense...to infer more than the mere possibility of misconduct." *Twombly*, 550 U.S. at 556. Further, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682). If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 556.

*Elliott v. Sandoz, Inc.*, No. 2:16-CV-00861-RDP, 2016 WL 4398407, at *3 (N.D. Ala. Aug. 18, 2016), *appeal docketed*, No. 16-16529 (11th Cir. Oct. 14, 2016).

[10] "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f).

[11] See n. 7, *supra*.

he owed and to whom he owed it. As mentioned, Ellswick does not allege that the information on the disclosure was inaccurate, misleading, or confusing, in and of itself—and how could he? The information contained in the disclosure accompanying the proof of claim was correct whether the credit transaction had been open-end, revolving, or closed-end, and those labels—"open-end," "revolving," "closed-end"—were not mentioned in the proof of claim or the disclosure. The bare, unembellished reference to Rule 3001(c)(3)(A) in the heading of the disclosure statement was the only idiom that might imply the transaction was open-end or revolving. However, without further explanation—and there was none—a least-sophisticated consumer would have no inkling that Rule 3001(c)(3)(A) applied to open-end and revolving credit transactions. Indeed, many who consider themselves thoroughly steeped in bankruptcy jurisprudence might not know the particulars of Rule 3001(c)(3)(A) without first glancing at the text of that Rule.

In summary, Ellswick must resort to arguing that by mentioning Rule 3001(c)(3)(A) in the heading of its proof of claim disclosure statement, but without any mention of what that Rule is all about, and making disclosures required for open-end and revolving transactions—but not disallowed for closed-end obligations—Quantum made a technically, albeit implicit, false representation that Ellswick's obligation was closed-end, and that such an implicit representation would qualify as a "representation" under the FDCPA. Ellswick would conclude that nothing more was needed to state a claim under the FDCPA. This court disagrees, and concludes that the act of attaching to a bankruptcy proof of claim accurate disclosures required for open-end and revolving obligations was not a "false representation" under the FDCPA when the obligation was actually closed-end. Thus, the undisputed facts alleged in the complaint are not sufficient to support Ellswick's FDCPA damages claim. *See also Hahn v. Triumph Partnerships LLC*, 557

F.3d 755, 757–58 (7th Cir. 2009) ("We do not see any reason why materiality should not equally be required in an action based on § 1692e. The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).).

The court finds that the recent decisions in *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016), *cert. granted*, 2016 WL 4944674 and *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014) do not alter this court's analysis. Both *Johnson* and *Crawford* addressed situations in which the cause of action arose because the debt for which the creditor filed a proof of claim was tainted under state law prior to, and apart from, bankruptcy. Unlike in those two cases, the alleged FDCPA causes of action in the instant AP depend completely upon the application of Rule 3001.[12] The alleged violations—attaching a statement of information that was not required under Rule 3001(c)(3)(A), and not providing a copy of the credit contract required under Rule 3001(c)(1)—have no possible existence aside from the bankruptcy case, and are not dependent on the underlying credit agreement or non-bankruptcy laws, such as state statutes of limitations.

In the *Crawford* and *Johnson* cases, while filing proofs of claim was the triggering event—an attempt to collect a time-barred debt—the pre-petition expiration of the state law statute of limitations was the poison pill that tainted the proofs of claim, and was the operative

---

[12] In *Crawford,* the Eleventh Circuit emphasized that the FDCPA was violated when a debt collector files suit in state court in an attempt to collect a time-barred debt, and that because filing a proof of claim in a bankruptcy case is likewise an attempt to collect a debt, such a claim is likewise an FDCPA violation. The FDCPA violations in *Crawford* existed because the state statute of limitation barred collection of the debt. Here the FDCPA violations do not depend on state law, but instead rely strictly on alleged noncompliance with the bankruptcy Rules.

component of the plaintiffs' FDCPA claims. Under those facts, the Eleventh Circuit found that there was no conflict (or preclusion) between the two statutory schemes at play—the Code and the FDCPA—but instead only overlapping layers of protection. The facts underlying Ellwick's claim for damages in this case only involve the form of Quantum's bankruptcy proof of claim and its attachment, and they do not support claims under the FDCPA.

Finally, because the complaint fails to state a claim under the FDCPA, the court need not address Quantum's argument that the Bankruptcy Code precludes a claim under the FDCPA based solely upon the form of an attachment to a proof of claim under Rule 3001. Accordingly, for the reasons stated above and in furtherance thereof, a separate order will be entered GRANTING the Motion to Dismiss (AP Doc. 11) and dismissing the AP with prejudice.[13]

Done this 23rd day of November 2016.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE

---

[13] Quantum filed a Motion to Stay (AP Doc. 48) the court's decision on the Motion to Dismiss addressed herein, pointing out the Supreme Court's recent grant of *certiorari* in *Johnson*. However, in light of this court's ruling that the complaint fails to state claim under the FDCPA, this court declines to reach the preclusion issue that is addressed in *Johnson*, and the Motion to Stay will be deemed moot by the separate order entered pursuant to this opinion.